UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Harold Stahl,** *et al.***,**

    **Plaintiffs,**

  v.                                                Case No. 2:03-cv-597
                                                    Judge Smith
                                                    Magistrate Judge King

**Bob Taft, Governor,** *et al.***,**

    **Defendants.**

**OPINION AND ORDER**

      Plaintiffs have moved this Court pursuant to Federal Rule of Civil Procedure 54(d) and 42 U.S.C. § 1988 for an order awarding them attorneys' fees as the prevailing party (Doc. 41). Plaintiffs initiated this case on July 2, 2003, against Defendants, state officials, for declaratory and injunctive relief under 42 U.S.C. § 1983.  Plaintiffs were challenging the constitutionality of Ohio's statutes that prohibited direct interstate sales and shipments of wine to Ohio residents. The Complaint included a demand for attorneys' fees pursuant to 42 U.S.C. § 1988.

      The case before this Court was one of eight cases filed in seven federal circuits by Plaintiffs' counsel, Mr. Epstein and Mr. Tanford.  *See* Granholm v. Heald, 125 S.Ct. 1885 (2005); Beskind v. Easley, 325 F.3d 506 (4th Cir. 2003); Bridenbaugh v. Freeman-Wilson, 227 F.3d 848 (7th Cir. 2000); Bainbridge v. Turner, 311 F.3d 1104 (11th Cir. 2002); Freeman v. McGreevey, 03-cv-3140 (D. N.J.); Parker v. Morrison (D. Ariz.); Wolfson v. Carcieri, 03-cv-463 (D. R.I.).  Plaintiffs are seeking $102,347.25 in attorneys' fees and expenses incurred through the date of filing the Reply brief on the issue of attorneys' fees.  In 2004, the United States Supreme Court granted certiorari in Granholm v. Heald and ruled in favor of the Plaintiffs by a five-to-four margin.  The case at bar was stayed pending the disposition of the Granholm case.  After the

Granholm decision was released, the parties agreed to a final order declaring unconstitutional Ohio Revised Code §§ 4303.25 and 4303.29, and Ohio Administrative code §§ 4301:1-1-22(A) and (C), and 4301:1-1-23, and enjoining their enforcement.  Now as the prevailing party, Plaintiffs are seeking their attorneys' fees.

      42 U.S.C. § 1988(b) provides in pertinent part: "[i]n any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."  When considering a petition for attorney's fees, the court must first determine whether the petitioning plaintiff was the prevailing party.  Wayne v. Village of Sebring, 36 F.3d 517, 531 (6th Cir. 1994).  To be a "prevailing party," a party must "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)(*quoting* Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)).  In Farrar v. Hobby, 506 U.S. 103, 113 (1992), the Court explained that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties . . . in a way that directly benefits the plaintiffs."  506 U.S. at 111-12. *See* Citizens Against Tax Waste v. Westerville City School Dist. Bd. of Educ., 985 F.2d 255, 257-58 (6th Cir. 1993).   There is no dispute that Plaintiff in this case is a prevailing party as the parties agreed to a final order declaring several Ohio laws unconstitutional.

      The next step of the analysis is whether the moving party's victory was sufficient to justify a fee award and what fee is reasonable. Farrar, 506 U.S. at 114.  The starting point in determining a reasonable fee is to determine the number of hours reasonably expended on the

litigation, excluding excessive, redundant or otherwise unnecessary hours, multiplied by a reasonable hourly rate.  Wayne, 36 F.3d at 531.  This is referred to as the "lodestar" calculation. A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney.  Wayne, 36 F.3d at 533.  The party seeking attorney's fees bears the burden of proof on the number of hours expended and the rates claimed.  Hensley, 461 U.S. at 433.  However, a "strong presumption" favors the prevailing lawyer's entitlement to his lodestar fee.  *See* City of Burlington v. Dague, 505 U.S. 557, 562 (1992).

After calculating the "lodestar" rate, the district court may then adjust the "lodestar" to reflect relevant considerations peculiar to the case and the result obtained.  Wayne, 36 F.3d at 531.  This step involves two questions: "First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983).  The adjustment is governed by a set of twelve factors first announced in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) and adopted by the Supreme Court in Hensley.[1]  Many of these factors may be considered either in determining the basic lodestar fee and/or adjustments thereto.  Paschal v. Flagstar Bank, 297 F.3d 431, 435 (6th Cir. 2002).

---

[1] These factors are: (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *See* Johnson, 488 F.2d at 717-19.

Defendants set forth several arguments as to why Plaintiffs' demand for attorneys fees is unreasonable and argue that the award demanded by Plaintiffs must be reduced.  First, Defendants argue that the fees Plaintiffs receive should be proportional to the claims that Plaintiffs prevailed on.  While Plaintiffs initially sought to invalidate nine Ohio statutes and three administrative rule, the parties settled on declaring two of the challenged statutes and two administrative rules unconstitutional.  Second, Defendants argue that the work claimed to be completed by Plaintiffs' counsel in this case is duplicative or similar to work in the other cases.  Third, Defendants argue that the Plaintiffs' discovery responses do not justify billing over thirty hours of work.  Fourth, Defendants assert that the victory in this case was achieved because of the efforts in the Granholm case, rather than the work performed in this case.  Fifth, Defendants argue that the $375 hourly rate charged by Mr. Epstein and Tanford is excessive and that at most they should not charge more than local counsel, Mr. Wolman's rate of $300 per hour.  Finally, Defendants argue that Plaintiffs' demand for $7,150 for costs, including primarily travel expenses, should be denied or reduced because of the availability of local counsel.  The Court will address each of Defendants' challenges to Plaintiffs' demand for attorneys fees.

First, the Court will examine the issue of whether Plaintiffs' attorneys fees should be reduced because they were only partially successful.  "If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."  Hensley, 461 U.S. at 436. Plaintiffs here dispute Defendants' characterization of the complaint in this case.  Plaintiffs principle claim in this case was that the Ohio statutory scheme that prohibited out-of-state

4

wineries from selling and shipping wine directly to Ohio residents was unconstitutional. Plaintiffs have prevailed on this claim, and therefore have achieved the ultimate outcome they were seeking.  When so-called unsuccessful claims are inseparable from successful claims, plaintiff is considered fully prevailing.  <u>Barnes v. City of Cincinnati</u>, 401 F.3d 729, 745 (6th Cir. 2005); <u>Thurman v. Yellow Freight Sys.,</u> 90 F.3d 1160, 1169 (6th Cir. 1996).  Therefore, because Plaintiffs have prevailed on the principle claim in this case, there will be no proportional reduction in the attorneys fees awarded.

Defendants' next two arguments are that the attorneys fees award should be reduced because the work is duplicative or similar to work in the other cases and that the victory is this case is not attributable to the attorneys' efforts in this case.  Defendants, however, do not provide any supporting caselaw for these arguments.  There is no question that the lead attorneys, Mr. Epstein and Mr. Tanford, have been involved in similar cases.  Plaintiffs' attorneys admit that every experienced attorney uses information learned in similar cases to save time and cuts and pastes from previous work whenever possible.  However, no work can be reused verbatim. Defendants even concede this and state that "Ohio's laws are not identical to those in other states, and some tailoring of the argument has to be done."  Defs' Memo. in Opp. at 7.  Plaintiffs have represented in their arguments and in the affidavits submitted to the Court that only the time spent tailoring their arguments to Ohio law was charged in this case.  Therefore, if Plaintiffs' attorneys were working on something that could be attributed to numerous cases, the time was divided and the appropriate percentage was charged to each individual case.  The entire time was not charged to each case.    In addition, there is no basis for Defendants' argument that the victory in this case is attributed to the <u>Granholm</u> case and not the attorneys' efforts in this

case.  Plaintiffs prevailed in this case because the statute was unconstitutional.  While similar arguments may have been made across the country, each state law is unique and accordingly, each case had to be litigated separately.  The Court, therefore, does not find Defendants' arguments persuasive and finds that the appropriate percentage of work for this case is reflected in the bills attached in support of Plaintiffs' Motion for Attorneys' Fees.

Next, Defendants argue that the Plaintiffs' discovery responses do not justify billing over thirty hours of work.  Defendants argue that the requests submitted by Plaintiffs are not extensive and Plaintiffs' responses to Defendants discovery are paltry.  Plaintiffs, however, respond that it takes just as much time to search for and find nothing as it does to find a smoking gun.  Other than Defendants' mere unhappiness with Plaintiffs' discovery responses, there is no basis for reducing the time Plaintiffs' attorneys spent on discovery.

Next, Defendants argue that the $375 hourly rate charged by Mr. Epstein and Tanford is excessive and that at most they should not charge more than local counsel, Mr. Wolman's rate of $300 per hour.  Plaintiffs respond that Mr. Wolman does not have the experience that Mr. Epstein and Mr. Tanford have and that Defendants have failed to file any counter-affidavits or challenge the local market rate.  It is true that the "experience, reputation, and ability of the attorneys" is one of the factors in determining the fee award.  <u>Adcock-Ladd v. Sec. of Treasury</u>, 227 F.3d 343, 349-50 (6th Cir. 2000).  A "district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney."  <u>Hudson v. Reno</u>, 130 F.3d 1193, 1208 (6th Cir. 1997).  In calculating a reasonable hourly rate, the court should consider the prevailing market rate in the relevant community. <u>Adcock-Ladd</u>, 227 F.3d at 350. The "prevailing market rate" is the rate which lawyers of comparable skill and experience can reasonably expect to

command within the venue of the court of record.  Id.

The Court has carefully reviewed the bills of each attorney in this case and considered the experience of each attorney.  While Mr. Wolman may not have been in practice as long as his co-counsel Mr. Epstein and Mr. Tanford, he is nonetheless an experienced litigator and his fees reflect his experience.  Mr. Wolman's rate of $300 per hour appears to be the rate a comparable attorney in Columbus, Ohio would charge and therefore the Court finds that $300 per hour is the reasonable rate for an attorney of similar caliber in Columbus, Ohio.  Therefore, $300 per hour shall be the reasonable rate used in calculating the attorneys fees in this case pursuant to the lodestar method.

Finally, Defendants argue that Plaintiffs' demand for $7150 for costs, including primarily travel expenses, should be denied or reduced because of the availability of local counsel. "Taxable costs do not automatically include all expenses.  Absent extraordinary or compelling circumstances, travel of attorneys is not a taxable cost of taking depositions."  Hollenbeck v. Falstaff Brewing Corp., 605 F. Supp. 421, 439 (D. Mo. 1985); *citing* Kiefel v. Las Vegas Hacienda, Inc., 404 F.2d 1163 (7th Cir. 1968); 6 Moore's Fed. Practice para. 54.77[4].  The Court in Hollenback denied Plaintiffs' request for travel expenses, telephone expenses, Federal Express and local delivery costs, postage expenses, and miscellaneous office expenses.

The Sixth Circuit has held that "in considering whether to allow expenses for traveling in excess of 100 miles, the court should consider the length of the journey, the necessity of the testimony, and the possibility of averting the travel expense."  Trepel v. Roadway Express, Inc., 64 Fed. Appx. 439, 444 (6th Cir. 2003); *see also* Soberay Mach. & Equip. Co. v. MRF Ltd. Inc., 181 F.3d 759, 771 (6th Cir. 1999).

Defendants argue that the travel expenses Plaintiffs are demanding are unnecessary. Plaintiffs attorneys Mr. Epstein and Mr. Tanford have demanded a total of 71.5 hours of travel time between the two of them. The bulk of Mr. Epstein's travel time was spent personally visiting potential witnesses. Additionally, both attorneys travel to Ohio for conferences before the court, that Defendants argue local counsel could have handled. Defendants also question Mr. Epstein's travel to and attendance at a wine summit in Chicago. Plaintiffs respond that the travel time was spent seeking evidence and potential expert testimony for use in summary judgment and at trial from people in the wine industry in California. Plaintiffs then generally state that Defendants' argument that the travel time is unreasonable offers few specifics and no authority. However, the party seeking attorney's fees bears the burden of proof on the number of hours expended and the rates claimed. Hensley, 461 U.S. at 433. Plaintiffs have failed to establish the necessity of the traveling expenses challenged by Defendants. Therefore, the 71.5 hours of travel time by Mr. Epstein and Mr. Tanford and the expenses associated with that travel shall not be included in the total award of attorneys' fees to Plaintiffs.

Accordingly, Plaintiffs' Motion for Attorneys' Fees is Granted in part. Defendants shall pay Plaintiffs a reasonable rate of $300 per hour for each hour of work provided by Mr. Epstein, Mr. Tanford, and Mr. Wolman. Plaintiffs are not to be compensated for the travel time of these attorneys or for the expenses associated with the travel.

Defendants shall therefore pay to Plaintiffs the following:

    Mr. Epstein's legal fees: 134.25 hours x $300/hour = $40,275
    Mr. Tanford's legal fees: 80.7 hours x $300/hour = $24,210

      Mr. Wolman's legal fees: 35.7 hours x $300/hour = $10,710

      Mr. Wolman's paralegal fees: 3.4 hours x $75/hour = $255

      Mr. Wolman's Filing costs: $19

For all of the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Attorneys' Fees in part. Defendants are ordered to pay Plaintiffs $75,469 by March 31, 2006.

The Clerk shall remove Doc. 41 from the Court's pending motions list.

**IT IS SO ORDERED.**

      /s/ George C. Smith
      **GEORGE C. SMITH, JUDGE**
      United States District Court